<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

In re:                                              :
                                                    :
SALANDER–O'REILLY GALLERIES,        :    Chapter 11
LLC,                                                :    Case No. 07-30005 (CGM)
                              *Debtor*         :

---------------------------------------------------------- x

ALAN M. JACOBS, as Liquidation Trustee   :
of the SOG Liquidation Trust,                  :
                              *Plaintiff*       :
                                                    :
                                                    :    Adversary No. 13-09004
*v.*                                                :
                                                    :
KRAKEN INVESTMENTS LIMITED,        :
                              *Defendant*    :

---------------------------------------------------------- x

## MEMORANDUM DECISION DENYING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

<u>**A P P E A R A N C E S :**</u>

PACHULSKI STANG ZIEHL & JONES
*Attorneys for Alan M. Jacobs, as Liquidation*
  *Trustee of the SOG Liquidation Trust*
780 Third Avenue
36th Floor
New York, NY 10017
<u>By:</u>    Robert J. Feinstein, Esq.
        John A. Morris, Esq.
        Ilan D. Scharf, Esq.

FAUST OPPENHEIM LLP
*Attorneys for Kraken Investments Limited*
488 Madison Avenue
17th Floor
New York, NY 10022
<u>By:</u>    David I. Faust, Esq.
        Petra v.Z. Davenport, Esq.

**CECELIA G. MORRIS**
**CHIEF U.S. BANKRUPTCY JUDGE**

Before the Court are cross-motions for summary judgment in this proceeding to determine the validity, extent and priority of interests asserted in the painting *Madonna and Child* by Sandro Botticelli (the "Botticelli"). At this juncture, the sole issues before the Court are (i) whether a perfected blanket lien in debtor's inventory attached to the Botticelli while it was on consignment to the debtor's art gallery, and (ii) if so, whether that lien has priority over the consignor's interest in the return of the painting. For the reasons set forth below, the Court concludes that material issues of fact preclude summary judgment for the either party at this time. Both motions are therefore denied.

## JURISDICTION

The Court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* signed by Chief District Judge Loretta A. Preska on January 31, 2012. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate) and (K) (determinations as to the validity, extent, or priority of liens).

## BACKGROUND[1]

This case was commenced by the filing of an involuntary petition against Salander–O'Reilly Galleries (the "Debtor") on November 1, 2007 (the "Petition Date"). Pl.'s Statement of Facts ¶ 1, No. 13-09004, ECF No. 55. Prior to the Petition Date, the Debtor operated an art gallery in New York City. *Id.* ¶ 2. As of the Petition Date, the Debtor was in possession of in excess of 4,000 works of art, many of which were subject to the claims or interests of various parties. *Id.* The Botticelli was one of these works of art.

---

[1]   Except where otherwise noted, the following facts are taken from the statements of fact and responses thereto that were submitted in support of the cross-motions for summary judgment. Exhibits were submitted in the form of attachments to the declarations of Ilan Scharf (the "Scharf Declaration") (Pl.'s Exs. A through I) and David I. Faust (the "Faust Declaration") (Def.'s Exs. 1 through 24). *See* Scharf Decl., No. 13-09004, ECF No. 56; Faust Decl., No. 13-09004, ECF No. 64. Except where noted, the facts are not in dispute.

The Botticelli is owned by Kraken Investments Limited ("Kraken" or the "Defendant"). Def.'s Statement of Facts ¶ 1, No. 13-09004, ECF No. 63. Kraken originally consigned the Botticelli to the Debtor's gallery for a one-year period in 2004. *Id.* ¶ 3. On May 3, 2006, Kraken and the Debtor entered into a second agreement (the "Second Consignment") to consign the Botticelli to the Debtor's gallery for another one-year period. *Id.* ¶ 7. A copy of the Second Consignment is attached to the Scharf Declaration as Exhibit A. *See* Scharf Decl. Ex. A, No. 13-09004, ECF No. 56. Among other things, the terms of the Second Consignment provided that the Debtor would list the Botticelli for sale for $9.5 million, with a sale to result in a commission of $1 million being payable to the Debtor and no less than $8.5 million being payable to Kraken. Pl.'s Statement of Facts ¶ 3, No. 13-09004, ECF No. 55. Kraken did not file a UCC-1 financing statement with respect to either consignment of the Botticelli to the Debtor. Def.'s Statement of Facts ¶ 6, No. 13-09004, ECF No. 63.

By its terms, the Second Consignment ended in May or June 2007. *Id.* ¶ 12; Pl.'s Statement of Facts ¶ 4, No. 13-09004, ECF No. 55. According to Kraken, after the Second Consignment ended, one of its agents removed the Botticelli from the Debtor's gallery and stored it in her apartment until September 2007. Def.'s Statement of Facts ¶ 13, No. 13-09004, ECF No. 63. At that time, Kraken contends that it returned the Botticelli to the Debtor's gallery as a loan for an exhibition that was to be held in October 2007. *Id.* ¶¶ 13–15. The liquidation trustee under the Debtor's confirmed chapter 11 plan (the "Trustee" or the "Plaintiff") disputes this claim, alleging that it is "self-serving" and "wholly contradicted by [the agent]'s testimony and Kraken's own pleadings to this Court." Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 13; 15. According to the Trustee, there is no evidence that the Botticelli was ever removed from the gallery after the Second Consignment ended. *Id.* ¶ 13.

On October 15 and 17, 2007, Kraken demanded the return of the Botticelli. Def.'s Statement of Facts ¶ 18, No. 13-09004, ECF No. 63. On October 25, 2007, Kraken filed suit in New York state court seeking seizure of the Botticelli. Pl.'s Statement of Facts ¶ 5, No. 13-09004, ECF No. 55. As set forth above, this case was commenced as an involuntary chapter 7 case on November 1, 2007 and converted to a voluntary chapter 11 case on November 9, 2007, staying Kraken's state court action. *Id.* ¶ 1. The Trustee is currently in possession of the Botticelli. Def.'s Statement of Facts ¶ 8, No. 13-09004, ECF No. 63.

On March 11, 2008, this Court entered an order approving a protocol (the "Art Claims Protocol") for assertion and resolution of claims of ownership against artwork in the possession, custody or control of the Debtor. Pl.'s Statement of Facts ¶ 6, No. 13-09004, ECF No. 55. Among other things, the Art Claims Protocol required parties asserting claims of ownership in artwork to file a claim (an "Art Claim") with supporting documentation on the Court's claims register for the Debtor's bankruptcy case. *Id.* The Art Claims Protocol further provided that a working group (the "Working Group") would convene to review the Art Claims to determine, among other things, whether the works subject to those claims were "Claimed Estate Assets" or "Non-Estate Assets." *See* Art Claims Protocol § VI, No. 07-30005, ECF No. 308. The Art Claims protocol provided:

> If any member of the Working Group asserts a good faith basis that [a work subject to an Art Claim] is property of the Debtor's estate, such Artwork shall be labeled a "Claimed Estate Asset." Each item of Artwork that the Working Group unanimously believes is not property of the Debtor's estate, including, without limitation . . . Artworks subject to consignment agreements that expired or were terminated in accordance with their terms, shall be labeled as a "Non-Estate Asset."

*Id.* Approximately 276 Art Claims were filed asserting claims against approximately 2,000 works of art. Pl.'s Statement of Facts ¶ 6, No. 13-09004, ECF No. 55.

On May 28, 2008, Kraken filed an Art Claim (the "Kraken Art Claim") asserting its ownership interest in the Botticelli. *Id.* ¶ 7. A copy of the Kraken Art Claim is attached to the Scharf Declaration as Exhibit B. *See* Scharf Decl. Ex. B, No. 13-09004, ECF No. 56. On July 17, 2008, Kraken also filed a proof of claim (the "Kraken Proof of Claim") for $9.5 million based on "consigned artwork." Pl.'s Statement of Facts ¶ 8, No. 13-09004, ECF No. 55. The Kraken Proof of Claim was assigned Claim No. 289 in the Debtor's bankruptcy case. *Id.* A copy of the Kraken Proof of Claim is attached to the Scharf Declaration as Exhibit C. *See* Scharf Decl. Ex. C, No. 13-09004, ECF No. 56.

After reviewing the Kraken Art Claim, the Working Group determined that the term of the Second Consignment expired prior to the Petition Date. Def.'s Statement of Facts ¶ 30, No. 13-09004, ECF No. 63. However, notwithstanding the pre-petition termination of the Second Consignment, the Working Group did not label the Botticelli a "Non-Estate Asset." *Id.* ¶ 31. Instead, on June 24, 2009, counsel for the Debtor sent a letter (the "June 24 Letter") to Kraken's attorneys scheduling the Kraken Art Claim for mediation pursuant to the Art Claims Protocol. A copy of the June 24 Letter is attached to the Faust Declaration as Exhibit 22. *See* Faust Decl. Ex. 22, No. 13-09004, ECF No. 64. According to the June 24 Letter, the purpose of the mediation would be to address the issue of "[w]hether [Kraken] can establish [its] asserted ownership interests in the [Botticelli] or whether such interests represent unperfected security interests under UCC Article 9." *Id.*

On December 15, 2010, after an unsuccessful mediation, the Trustee and Bank of America, as successor-in-interest to Merrill Lynch Bank & Trust Co. and First Republic Bank (collectively, the "Bank") entered into an assignment of lien (the "Lien Assignment") with respect to the Botticelli. A copy of the Lien Assignment is attached to the Scharf Declaration as

Exhibit G. *See* Scharf Decl. Ex. G, No. 13-09004, ECF No. 56. Pursuant to the Lien Assignment,

the Bank:

> assign[ed], transfer[red] and convey[ed] outright and unconditionally to the [Trustee] . . . all of the Bank's right, title and interest in or to the [Botticelli], including without limitation the Bank's lien against or in the [Botticelli] and all of the rights, powers, privileges, remedies, and other benefits of the Bank with respect to the [Botticelli].

*Id.* ¶ 2.

The Bank's purported lien in the Botticelli arises out of a pre-petition loan agreement

between the Bank and the Debtor (the "Loan Agreement"). *See* Pl.'s Statement of Facts ¶ 9, No.

13-09004, ECF No. 55. A copy of the Loan Agreement is attached to the Scharf Declaration as

Exhibit D. *See* Scharf Decl. Ex. D, No. 13-09004, ECF No. 56. By virtue of the Loan

Agreement, the Debtor granted the Bank a continuing security interest in all of the Debtor's

"personal and fixture property of every kind and nature including without limitation all goods

(including inventory, equipment, and any accessions thereto) . . . and all products and proceeds

of the foregoing." *Id.* § 6.1. The Bank perfected its blanket lien in substantially all of the

Debtor's assets by, among other things, filing a UCC-1 financing statement (the "UCC-1") on

March 1, 2005. A copy of the UCC-1 is attached to the Scharf Declaration as Exhibit E. *See*

Scharf Decl. Ex. E, No. 13-09004, ECF No. 56. Pursuant to the UCC-1, the collateral securing

the Bank's claim against the Debtor included "all works of art." *Id.*

On January 19, 2011, after the unsuccessful mediation and the Bank's assignment of its

purported lien in the Botticelli to the Trustee, Kraken filed a motion for relief from the automatic

stay to enforce the arbitration provisions of the Second Consignment and arbitrate the dispute

between Kraken and the Trustee over whether the Botticelli was property of the Debtor's

bankruptcy estate. *See* Mot. ¶¶ 19–22, No. 07-30005, ECF No. 938. After a hearing and briefing

by Kraken and the Trustee, this Court entered a memorandum decision denying the motion for stay relief. *See In re Salander–O'Reilly Galleries*, 453 B.R. 106 (Bankr. S.D.N.Y. 2011), *aff'd sub nom.*, *Kraken Inv. Ltd. v. Jacobs (In re Salander–O'Reilly Galleries)*, 475 B.R. 9 (S.D.N.Y. 2012).

On September 5, 2012, the Trustee filed an objection to the Kraken Art Claim and the Kraken Proof of Claim (collectively, the "Claim Objection"). *See* Claim Obj., No. 07-30005, ECF No. 1112. In sum, the Trustee alleged that Kraken failed to perfect its interest in the Botticelli and that the Trustee had a superior right to the Botticelli either: (i) pursuant to § 544(a) of the Bankruptcy Code, which allows the Trustee to avoid certain unperfected interests in the Debtor's property; or, alternatively, (ii) as assignee of the Bank's perfected lien in the Botticelli. *See id.* ¶ 1. On November 30, 2012, Kraken filed a response to the Claim Objection. *See* Resp. to Claim Obj., No. 07-30005, ECF No. 1133. In its response, Kraken contended: (i) the Trustee could not exercise any rights under § 554(a) with respect to the Botticelli, since the Debtor had no interest in the Botticelli as of the Petition Date; and (ii) the Bank's lien did not extend to goods that the Debtor held consignment such as the Botticelli. *See id.* ¶¶ 97–111. Kraken also requested that the Court convert the Claim Objection into an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001. *Id.* ¶ 112.

On January 24, 2013, the Court so-ordered a stipulation between Kraken and the Trustee providing that the Claim Objection would proceed as an adversary proceeding. *See* Order, No. 07-30005, ECF No. 1149. Pursuant to the stipulation, the Claim Objection was deemed to be the Trustee's complaint. *Id.* ¶¶ 4. Kraken's response to the Claim Objection was deemed to be its answer. *Id.* ¶ 5.

On November 26, 2013, the Trustee filed a motion for summary judgment (the "Trustee's Motion") supported by a statement of facts, the Scharf Declaration, and a memorandum of law. *See* Mot., No. 13-09004, ECF No. 54; Pl.'s Statement of Facts, No. 13-09004, ECF No. 55; Scharf Decl., No. 13-09004, ECF No. 56; Pl.'s Mem. of Law, No. 13-09004, ECF No. 57. On January 6, 2014, Kraken filed opposition to the Trustee's Motion and a response to the Trustee's statement of facts. *See* Def.'s Opp., No. 13-09004, ECF No. 68; Def.'s Resp. to Pl.'s Statement of Facts, No. 13-09004, ECF No. 69. On January 27, 2014, the Trustee filed a reply to Kraken's opposition. *See* Pl.'s Reply, No. 13-09004, ECF No. 76.

On December 3, 2013, Kraken filed a cross-motion for summary judgment ("Kraken's Motion," together with the Trustee's Motion, the "Motions") supported by a statement of facts, the Faust Declaration, and a memorandum of law. *See* Mot., No. 13-09004, ECF No. 61; Def.'s Statement of Facts, No. 13-09004, ECF No. 63; Faust Decl., No. 13-09004, ECF No. 64; Def.'s Mem. of Law, No. 13-09004, ECF No. 62. On January 6, 2014, the Trustee filed opposition to Kraken's Motion and a response to Kraken's statement of facts. *See* Pl.'s Opp., No. 13-09004, ECF No. 72; Pl.'s Resp. to Def.'s Statement of Facts, No. 13-09004, ECF No. 71. On January 27, 2014, Kraken filed a reply. *See* Def.'s Reply, No. 13-09004, ECF No. 74.

A hearing on the Motions was held on February 19, 2014. The Court reserved decision and now issues this memorandum decision resolving the Motions.

## DISCUSSION

### A.    *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a), applicable in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it

'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542

F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'" *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012)

(quoting *Anderson*, 477 U.S. at 248).

"The burden rests on the movant to demonstrate the absence of a genuine issue of

material fact." *Jacobowitz v. Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 435 (S.D.N.Y. 2004)

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986)). "In determining whether that burden

has been met, the court is required to resolve all ambiguities and credit all factual inferences that

could be drawn in favor of the party against whom summary judgment is sought." *Vivenzio v.

City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010); *see Gallo v. Prudential Residential Servs.,

L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). "When ruling upon cross-motions for summary

judgment, the court must evaluate each motion separately and must draw all reasonable

inferences against the party whose motion is under consideration." *Coach, Inc. v. Peters,* 386

F.Supp.2d 495, 497 (S.D.N.Y. 2005).

In considering a motion for summary judgment, "[t]he trial court should not weigh the

evidence or determine the truth of any matter." *Virgin Atlantic Airways Ltd. v. British Airways

PLC*, 257 F.3d 256, 262 (2d Cir. 2001) (citing *Anderson*, 477 U.S. at 248). As a result, "if there

is any evidence in the record from any source from which a reasonable inference could be drawn

in favor of the non-moving party, summary judgment is improper." *Howley v. Town of Stratford*,

217 F.3d 141, 151 (2d Cir. 2000).

B.     *Disposition of the Motions*

i.     *The Trustee's Motion*

For purposes of the Trustee's Motion, the Trustee is seeking summary judgment solely on the basis that he has a superior right to the Botticelli as the assignee of the Bank's perfected lien. *See* Pl.'s Reply ¶ 6, No. 13-09004, ECF No. 76 ("[T]he Trustee is not relying on his judicial lien, which would have arisen as of the Petition Date and apparently after the [Second Consignment] ended."). For the reasons discussed below, the Court concludes that there are material issues of fact that preclude judgment for the Trustee at this time.

As set forth above, the parties do not dispute that Kraken owns the Botticelli. *See* Def.'s Statement of Facts ¶ 1, No. 13-09004, ECF No. 63 ("Kraken owns the painting *Madonna and Child* by Sandro Botticelli . . . ."); Pl.'s Resp. to Def.'s Statement of Fact, ¶ 1, No. 13-09004, ECF No. 71 ("[The Trustee] does not dispute this assertion."). As between the Debtor and Kraken, the Court agrees that Kraken owns the Botticelli. *See In re Valley Media, Inc.*, 279 B.R. 105, 123 (Bankr. D. Del. 2002) (stating that nothing in the Uniform Commercial Code "affects the ownership rights of the consignor in relation to the consignee"). However, the claims made by the Trustee in this adversary proceeding are based on provisions of the Uniform Commercial Code that allow the creditors of a consignee such as the Debtor to obtain rights in consigned goods that are superior to those of the actual owner of the goods if the owner fails to take steps to perfect its interest.

Under the Uniform Commercial Code, where a transaction is a "consignment," the consignee—in this case, the Debtor—will be deemed to hold rights and title to the goods equal to those of the consignor:

[F]or purposes of determining the rights of creditors of . . . a consignee, while the goods are in the possession of the consignee, the consignee is deemed to have

rights and title to the goods identical to those the consignor had or had power to transfer.

N.Y. U.C.C. Law § 9–319(a). In contrast, the consignor—in this case Kraken, the "owner" of the Botticelli—is deemed to hold only a purchase-money security interest in the consigned goods as against creditors of the consignee. *See* N.Y. U.C.C. Law §§ 1–201(37) (stating that a "'[s]ecurity interest' . . . includes any interest of a consignor . . . in a transaction that is subject to Article 9"); 9–103(d) (stating that "[t]he security interest of a consignor in goods that are the subject of a consignment is a purchase-money security interest in inventory"). Although a consignor may perfect its purchase-money security interest in the consigned goods to prevent creditors of the consignee from obtaining rights superior to the consignor, Kraken admits that it failed to file a UCC-1 financing statement to protect its interest in the Botticelli. *See* Def.'s Statement of Facts ¶ 6, No. 13-09004, ECF No. 63.

In light of these provisions, creditors of the Debtor such as the Bank may have obtained rights in the Botticelli superior to those of Kraken, provided that the provisions of Article 9 apply to the consignment of the Botticelli. By its terms, Article 9 applies to a "consignment." *See* N.Y. U.C.C. Law § 9–109(a)(4). Article 9 defines a "consignment" as:

> [A] transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:
>
> (A)    the merchant:
>
>> (i)    deals in goods of that kind under a name other than the name of the person making delivery;
>>
>> (ii)    is not an auctioneer; and
>>
>> (iii)    is not generally known by its creditors to be substantially engaged in selling the goods of others;
>
> (B)    with respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

(C)    the goods are not consumer goods immediately before delivery; and

(D)    the transaction does not create a security interest that secures an obligation.

*Id.* § 9–102(a)(20).

In support of the Trustee's Motion, the Trustee alleges:

[T]he transactions between Kraken and the Debtor fall squarely within the definition of a consignment because Kraken delivered the [Botticelli] to the Debtor and (a) the Debtor dealt in artwork under its own name and not in Kraken's name, (b) the Debtor was not an auctioneer, (c) the Debtor was not generally known by its creditors to be substantially engaged in selling the goods of others, (d) the value of the [Botticelli] was more than $1,000 at the time of delivery, (e) the [Botticelli] is not a consumer good, and (f) the transaction did not create a security interest as in favor of Kraken.

Pl.'s Mem. of Law 11, No. 13-09004, ECF No. 57. The Trustee does not provide any evidentiary support for these allegations, instead contending that Kraken bears the burden of bringing forth evidence to disprove the application of § 9–102(a)(20). *See id.* at 12 n.9 (stating that "[Kraken] must prove" that the Debtor was not generally known by its creditors to be substantially engaged in selling the goods of others (citing *Valley Media*, 279 B.R. at 123)).

Contrary to the Trustee's contention, in the Second Circuit, the burden of proof falls on the party claiming applicability of § 9–102(a)(20) to show that each element of the definition is satisfied. *In re G.S. Distrib., Inc.*, 331 B.R. 552, 561 (Bankr. S.D.N.Y. 2005) ("[T]he burden of proof falls on the party claiming applicability of [§ 9–102(a)(20)]."); *In re Mortgansen's Ltd.*, 302 B.R. 784, 787 (Bankr. E.D.N.Y. 2003) ("[T]he burden of proof with respect to each attribute falls on the party claiming to be protected by [§ 9–102(a)(20)].").[2] The Trustee has failed to

---

[2]    In *Salander–O'Reilly*, the District Court noted that this Court "in subsequent proceedings will have to determine which party bears the burden of proof on th[is] issue . . . ." *Salander–O'Reilly*, 475 B.R. at 24 n.18 (citing *French Design Jewelry, Inc. v. Downey Creations, LLC (In re Downey Creations, LLC)*, 414 B.R. 463, 467–72 (Bankr. S.D. Ind. 2009)). In light of the unequivocal statements regarding the allocation of the burden of proof in *G.S. Distribution* and *Mortgansen's*, and the lack of any contrary authority presented by the parties from other courts in this Circuit, this Court agrees that the burden of proof falls on the party claiming applicability of § 9–102(a)(20). In this case, that party is the Trustee.

produce any evidence in support of this issue on which the Trustee will bear the burden of proof at trial. This failure by the Trustee warrants denial of the Trustee's Motion. *See Feurtado v. City of New York*, 337 F.Supp.2d 593, 599 (S.D.N.Y. 2004) (stating that, at the summary judgment stage, "where the movant does bear the burden of proof on an issue, it must furnish evidence in support of its contentions . . ." (citing *Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003))).

To be clear, the Court does not hold one way or the other that the transaction by which the Botticelli came into the Debtor's possession was or was not governed by Article 9 of the Uniform Commercial Code. Rather, the Court finds that, at the summary judgment stage, the Trustee has failed to offer any evidence from which the Court can conclude that the requirements of § 9–102(a)(20) have been met with respect to the transaction. The Court is therefore unable to award summary judgment to the Trustee.

### ii.    *Kraken's Motion*

In Kraken's Motion, Kraken sets forth essentially two reasons why this Court should award it summary judgment on the Claim Objection: (i) under the terms of the Loan Agreement and based on the testimony of representatives of the Bank, the Bank did not obtain a lien on consigned goods such as the Botticelli; and (ii) the Second Consignment expired pre-petition, which entitles Kraken to the return of the Botticelli under *Valley Media* and the terms of the Art Claims Protocol. As discussed below, the Court concludes that Kraken has not established its entitlement to summary judgment on these bases.

### a.    *The Terms of the Loan Agreement Unambiguously Grant the Bank a Lien on Consigned Inventory*

According to Kraken, "the inescapable conclusion is that the Bank (a) would not and did not lend against the Botticelli and (b) neither sought nor received a security interest therein."

Def.'s Mem. of Law 17, No. 13-09004, ECF No. 62. In support of this contention, Kraken cites

to: (i) the definition of "Eligible Inventory" in § 1.4 of the Loan Agreement, which specifically

excludes works of art on consignment; and (ii) the deposition testimony of various executives of

the Bank, who did not take possession of the Botticelli pre-petition at the time they took

possession of other collateral and who allegedly testified that they did not consider consigned

artwork to be collateral. *See id.* at 14–17. In response, the Trustee contends: (i) the definition of

"Eligible Inventory" relates to the calculation of advances under the Loan Agreement and does

not limit the scope of the Bank's security interest; and (ii) the parol evidence rule bars the

admission of extrinsic evidence to contradict the terms of the Loan Agreement. *See* Pl.'s Opp.

17–20, No. 13-09004, ECF No. 72. The Court agrees with the Trustee.

In New York,[3] "the question of whether a written contract is ambiguous is a question of

law for the court." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (citing *Seiden

Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992)). "Ambiguity is

determined by looking within the four corners of the document, not to outside sources." *Kass v.

Kass*, 696 N.E.2d 174, 180 (N.Y. 1998). Language is unambiguous when it has "a definite and

precise meaning, unattended by danger of misconception . . . and concerning which there is no

reasonable basis for a difference of opinion." *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282

(N.Y. 1978). By contrast, ambiguous language is "capable of more than one meaning when

viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as

generally understood in the particular trade or business." *Revson v. Cinque & Cinque, P.C.*, 221

F.3d 59, 66 (2d Cir. 2000) (quoting *Seiden*, 959 F.2d at 428).

---

[3]  New York law governs the Loan Agreement. *See* Scharf Decl. Ex. E (Loan Agreement) § 11.10, No. 13-09004,
ECF No. 56.

"Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). "If the contract is unambiguous, its meaning is . . . a question of law for the court to decide." *JA Apparel*, 568 F.3d at 397. In interpreting an unambiguous contract, the court "is to consider particular words not in isolation but in the light of the obligation as a whole and the intention of the parties as manifested thereby, but the court is not to consider any extrinsic evidence as to the parties' intentions." *Id.* (citations omitted); *see also Marine Midland Bank-Southern v. Thurlow*, 425 N.E.2d 805, 807–08 (N.Y. 1981) (applying parol evidence rule).

Upon review of the Loan Agreement, the Court concludes that it unambiguously grants the Bank a lien in all of the Debtor's inventory, including consigned goods. Section 6.1 grants the Bank a lien in "all personal property . . . of every kind and nature . . . ." *See* Scharf Decl. Ex. E (Loan Agreement) § 6.1, No. 13-09004, ECF No. 56. Although § 1.4 excludes consigned goods from being used to determine the amount that the Bank would loan to the Debtor, there is no corresponding provision in § 6.1 excluding consigned goods from the scope of the Bank's lien. *Compare id.* § 1.4(b) ("'Eligible Inventory' shall mean any works of art . . . which . . . [a]re not held by the Borrower on consignment . . . .") *with id.* § 6.4 (stating that collateral includes "all personal and fixture property of every kind and nature . . .").

In support of its view that the Loan Agreement does not include goods that the Debtor held on consignment, Kraken points to § 6.2, in which the Debtor "represents, warrants and covenants that . . . [the Debtor] shall be the sole owner . . . of . . . each and every item of its Collateral." *Id.* § 6.2(a). According to Kraken, § 6.2 is evidence that "Collateral is . . . defined to include only Artwork owned[ ] free and clear." Def.'s Mem. of Law 14, No. 13-09004, ECF No.

62. Kraken misreads the Loan Agreement. Section 6.2 does not define "collateral" to include only works of art that are not held on consignment. Rather, it imposes a requirement on the Debtor to make certain representations and warranties to the Bank without limiting whether or not the Bank's lien attaches to the collateral. *See* Scharf Decl. Ex. E (Loan Agreement) § 6.2(a), No. 13-09004, ECF No. 56. The hanging paragraph at the end of § 6.2 illustrates this point. It states:

> The failure of any Collateral to fully comply with the provisions of this Section 6.2 *shall not affect, terminate, modify or otherwise limit the Bank's lien or security interest in the Collateral*.

*Id.* (emphasis added).

From the hanging paragraph and the balance of §§ 6.1 and 6.2, the Court concludes that the Loan Agreement unambiguously grants the Bank a lien in all of the Debtor's property without regard to whether the property was held on consignment. For that reason, the Court also concludes that Kraken may not introduce extrinsic evidence—including the testimony of any of the Bank's representatives—to contradict the unambiguous terms of the Loan Agreement. *See JA Apparel*, 568 F.3d at 397; *Seiden*, 959 F.2d at 428 ("If the language unambiguously conveys the parties' intent, extrinsic evidence may not be properly received . . ., since th[is] extraneous factor[ ] would vary the effect of the contract's terms. "); *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) ("The parties' rights under an unambiguous contract should be fathomed from the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed . . . .").

In view of the foregoing, the Court concludes that Kraken has not established that it is entitled to summary judgment on the basis that the Bank's lien did not extend to consigned goods such as the Botticelli.

    b.  ***The Pre-Petition Termination of the Second Consignment Does Not Necessarily Entitle Kraken to the Botticelli***

   Kraken also contends that the termination of the Second Consignment mandates that the Botticelli be returned to Kraken. Specifically, Kraken contends that the return of the Botticelli is warranted: (i) under the precedent of *Valley Media*, in which consignors whose consignment agreements were terminated pre-petition were entitled to the return of their consigned goods; (ii) pursuant to the terms of the Art Claims Protocol, which Kraken contends requires the return of consigned goods where the relevant consignment agreement terminated pre-petition; and (iii) because the Botticelli was removed from the Debtor's gallery in May 2007 and returned solely on loan for an exhibition, not on consignment. Def.'s Mem. of Law 18–22, No. 13-09004, ECF No. 62. The Court finds each of Kraken's arguments unpersuasive.

   Kraken cites *Valley Media* for the proposition that the pre-petition termination of a consignment agreement requires the return of the consigned goods. *Id.* at 20–21. Specifically, Kraken contends:

> [The consignors in *Valley Media*] recovered their inventory notwithstanding that they had not filed UCC-1 financing statements because their "distribution agreements" were terminated pre-petition . . . . The principle of the *Valley Media* decision is clear—where the consignment terminated prior to the bankruptcy, the bankruptcy estate did not include consigned inventory still in the possession of the debtor.

*Id.* at 21 (citing *Valley Media*, 279 B.R. at 142–44). Although Kraken is correct that *Valley Media* allowed certain consignors under terminated consignment agreements to recover their consigned goods, it did so where the debtor-in-possession was seeking to exercise its powers as a hypothetical lien creditor under § 544(a) of the Bankruptcy Code, not as assignee of a prior perfected lienholder in the goods. *See Valley Media*, 279 B.R. at 132. With respect to the creditors whose consignment agreements had terminated pre-petition, the *Valley Media* court

held that the debtor-in-possession never came into any rights in the consigned goods in order to exercise any powers under § 544(a). *Id.* at 142–43. Here, the Trustee has expressly disclaimed that he is seeking to exercise any rights under § 544(a). *See* Pl.'s Reply ¶ 6, No. 13-09004, ECF No. 76 ("[T]he Trustee is not relying on his judicial lien, which would have arisen as of the Petition Date and apparently after the [Second Consignment] ended."). Instead, the Trustee is relying on his status as the assignee of the Bank, which the Trustee contends has a perfected lien in the Botticelli pursuant to the Loan Agreement. As *Valley Media* did not involve the rights of a competing lienholder in the consigned goods, nothing in that case is controlling of the issues before the Court in the Motions.

Kraken also contends that the terms of the Art Claims Protocol require the return of the Botticelli to Kraken since the Second Consignment terminated pre-petition. Def.'s Mem. of Law 18–20, No. 13-09004, ECF No. 62. As set forth above, the Art Claims Protocol provides in relevant part:

> If any member of the Working Group asserts a good faith basis that [a work subject to an Art Claim] is property of the Debtor's estate, such Artwork shall be labeled a "Claimed Estate Asset." Each item of Artwork that the Working Group unanimously believes is not property of the Debtor's estate, including, without limitation, Artwork indisputably protected under the ACAL, Artworks that are subject to perfected consignment agreements in accordance with the UCC by the relevant consignor, and Artworks subject to consignment agreements that expired or were terminated in accordance with their terms, shall be labeled as a "Non-Estate Asset."

Art Claims Protocol § VI, No. 07-30005, ECF No. 308. By Kraken's interpretation of the Art Claims Protocol, any of the listed classes of artwork—works indisputably protected under the ACAL, works subject to perfected consignment agreements, and works subject to expired consignment agreements—*must* be labeled as "Non-Estate Assets" and returned. *See* Def.'s Mem. of Law 18, No. 13-09004, ECF No. 62 ("[T]he use of 'shall' did not give the Working

Group discretion to determine that the Botticelli—which was subject to an expired consignment agreement—was anything other than a Non-Estate Asset.").

By contrast, the Trustee argues that the Art Claims Protocol "does not direct the Working Group to determine that artwork subject to a terminated consignment agreement is a Non-Estate Asset." Pl.'s Opp. ¶ 39, No. 13-09004, ECF No. 72. Instead, the Art Claims Protocol "provides that artwork that the Working Group unanimously believed was not property of the Debtor's estate would be labeled a 'Non-Estate Asset.'" *Id.* ¶ 40. The Court agrees with the Trustee. The relevant understanding of the terms of the Art Claims Protocol is that "[e]ach item of Artwork that the Working Group unanimously believes is not property of the Debtor's estate . . . shall be labeled as a 'Non-Estate Asset.'" Art Claims Protocol § VI, No. 07-30005, ECF No. 308. The list of types of artwork is illustrative of the types of artwork that the Working Group *might* unanimously believe is not property of the Debtor's estate. *See id.* However, nothing in the Art Claims Protocol *requires* the Working Group to conclude that any type of artwork is or is not property of the Debtor's estate. Kraken concedes that the Working Group did not "unanimously believe" that the Botticelli was a "Non-Estate Asset." *See* Def.'s Mem. of Law 18–19, No. 13-09004, ECF No. 62. As a result, nothing in the Art Claims Protocol mandated that the Botticelli be labeled a "Non-Estate Asset" and returned to Kraken.

Kraken's final argument involves Kraken's contention that the Botticelli was removed from the Debtor's gallery in May 2007 and returned in September 2007 solely as a loan for an exhibition. *Id.* at 21–22. Kraken contends that the removal terminated the "consignment" of the Botticelli in favor of a "loan" to the Debtor. *Id.* at 21. However, Kraken's argument that the consignment ended as a result of the removal from the Debtor's gallery is premised on a disputed issue of fact; specifically, whether the Botticelli was actually removed from the gallery by one of

Kraken's agents. As set forth above, the Trustee disputes that the Botticelli was actually removed

from the gallery at any time after the expiration of the Second Consignment. *See* Pl.'s Resp. to

Def.'s Statement of Facts ¶¶ 13; 15. At the summary judgment stage, the Court cannot resolve

this disputed issue of fact. *See Anderson*, 477 U.S. at 248. Accordingly, the Court cannot award

Kraken summary judgment on this basis.

## CONCLUSION

For the reasons set forth above, the Motions are denied. The Court will issue a separate

order consistent with this memorandum decision.

Dated: Poughkeepsie, New York
        March 21, 2014

/s/ Cecelia G. Morris
CECELIA G. MORRIS
CHIEF U.S. BANKRUPTCY JUDGE